**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **LISA G. NAPIER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00040 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Lisa G. Napier, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq*. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Napier filed her applications for DIB and SSI[1] on or about August 24, 2000, alleging disability as of March 17, 1999, based on fibromyalgia, anxiety, panic attacks, poor memory, pain and stiffness in the shoulder, neck, back and legs and muscle spasms in the back and legs. (Record, ("R."), at 60-62, 77, 102, 210-13.) The claims were denied initially and upon reconsideration. (R. at 51-53, 54, 56-57, 216-18, 221-22.) Napier then requested a hearing before an ALJ. (R. at 58.) The ALJ held a hearing on July 26, 2001, at which Napier was represented by counsel. (R. at 245-69.)

By decision dated October 19, 2001, the ALJ denied Napier's claims. (R. at 24-32.) The ALJ found that Napier met the disability insured status requirements of the Act for disability purposes through the date of the decision. (R. at 30.) The ALJ found

---

[1]Napier filed prior applications for DIB and SSI on April 8, 1999, alleging disability as of March 17, 1999. (R. at 24.) These claims were denied initially, on reconsideration, and, following a hearing before an administrative law judge, ("ALJ"), by a decision dated May 22, 2000. (R. at 24, 41-47.) Napier filed a request for review, but the Appeals Council denied the request. (R. at 24.) The May 22, 2000, decision was not pursued further. (R. at 24.)

that Napier had not engaged in substantial gainful activity since March 17, 1999. (R. at 31.) The ALJ also found that the medical evidence established that Napier had severe impairments, namely degenerative disc disease and fibromyalgia, but he found that Napier did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 31.) The ALJ found that Napier's allegations regarding her limitations were not totally credible. (R. at 31.) The ALJ found that Napier had the residual functional capacity to perform light work.[2] (R. at 31.) Based on Napier's age, education and past work history and the Medical-Vocational Guidelines, ("the Grids"), found at 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that other jobs existed that Napier could perform. (R. at 31.) Therefore, the ALJ concluded that Napier was not under a disability as defined by the Act and was not eligible for benefits. (R. at 31-32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued his opinion, Napier pursued her administrative appeals, (R. at 19), but the Appeals Council denied her request for review. (R. at 9-13.) Napier then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Napier's motion for summary judgment filed February 6, 2006, and on the Commissioner's motion for summary judgment filed March 8, 2006.

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2005).

-3-

## II. Facts[3]

Napier was born in 1959, (R. at 60), which, classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2005). She has a high school education and training as a certified nurse's aide. (R. at 83, 248.) She has past work experience as a nurse's aide and a nursing coordinator. (R. at 86.)

At her hearing, Napier testified that she could sit for 20 minutes without interruption. (R. at 260.) She stated that she could sit longer than she could stand. (R. at 260.) Napier stated that she was not seeing a psychologist or psychiatrist. (R. at 262.) She also stated that she had never been hospitalized for anxiety or depression. (R. at 262.)

In rendering his decision, the ALJ reviewed records from Dr. Olimpo Fonseca, M.D.; Dr. Christopher Morris, M.D.; Norton Community Hospital; Dr. Todd A. Cassel, M.D.; Dr. Karl W. Konrad, Ph.D., M.D.; R. J. Milan Jr., Ph.D., a state agency psychologist; Howard S. Leizer, Ph.D., a state agency psychologist; and Dr. Richard M. Surrusco, M.D., a state agency physician. Napier's attorney submitted additional medical records from Dr. Cassel to the Appeals Council.[4]

---

[3]The ALJ's May 22, 2000, determination that Napier was not disabled prior to that date is res judicata. Thus, the relevant period currently before this court for determining whether Napier is disabled runs from May 23, 2000, through October 19, 2001. Only those medical records relevant to these time periods will be considered in this Report and Recommendation.

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 9-13), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-4-

The record shows that Dr. Christopher Morris, M.D., treated Napier one time in 2000 for fibromyalgia symptoms that included insomnia, bad nerves, fatigue, anxiety, pain and stiffness. (R. at 133.) Dr. Morris noted that a review of Napier's lab results were normal. (R. at 133.) Physical examination revealed tender points in eight areas. (R. at 132.) There was no evidence of synovitis, and Napier had full range of motion. (R. at 132.) Dr. Morris indicated that fibromyalgia appeared to be the most appropriate diagnosis. (R. at 132.)

The record shows that Napier saw Dr. Todd A. Cassel, M.D., on four occasions in 2000 and five occasions in 2001 for symptoms of fibromyalgia and depression. (R. at 145-46, 197-98, 200-01, 239.) Napier's symptoms included pain, anxiety, sleep disturbance, stiffness, depressed mood, loss of energy, tenderness and burning in the shoulders and side effects of medication. (R. at 145-46, 197-98, 200-01, 239.) On May 2, 2000, Napier reported that she had been to the emergency room "to demand Ativan." (R. at 146.) She also reported that she was working on her disability. (R. at 146.) On August 17, 2000, Dr. Cassel reported that Napier looked and acted depressed. (R. at 145.) Dr. Cassel suspected poorly treated underlying depression. (R. at 145.) On April 16, 2001, Napier reported that she did not feel depressed. (R. at 197.) On June 22, 2001, Dr. Cassel wrote a letter to Napier's attorney indicating that he had diagnosed Napier with fibromyalgia, chronic pain, depression and bronchitis. (R. at 196.) He indicated that Napier remained unable to work and would be unable to work in the foreseeable future, six to 12 months, because of these problems. (R. at 196.) Dr. Cassel also indicated that he wrote the letter at Napier's request to document her employment status for her legal representation. (R. at 196.) On March 5, 2002, Dr. Cassel reported that Napier was moderately depressed. (R. at 240.) On August 16,

2002, Napier reported that her medication was helping, and her mood was described as fair. (R. at 243.)

On May 8, 2003, Dr. Cassel completed a mental assessment indicating that Napier had a more than satisfactory ability to understand, remember and carry out simple job instructions. (R. at 233-35.) He indicated that Napier was limited, but satisfactory, in her ability to follow work rules, to use judgment, to function independently, to understand, remember and carry out complex and detailed instructions, to maintain personal appearance and to demonstrate reliability. (R. at 233-34.) Dr. Cassel also reported that Napier had a seriously limited, but not precluded, ability to relate to co-workers, to deal with the public, to interact with supervisors, to maintain attention/concentration, to relate predictably in social situations and to behave in an emotionally stable manner. (R. at 233-34.)

Dr. Cassel also completed a physical assessment indicating that Napier could occasionally lift and carry items weighing up to 15 pounds and frequently lift and carry items weighing up to five pounds. (R. at 236-38.) He indicated that Napier could stand and/or walk two hours in an eight-hour workday and that she could do so for 30 minutes without interruption. (R. at 236.) He indicated that Napier could sit for five to seven hours in an eight-hour workday and that she could do so for one hour without interruption. (R. at 237.) Dr. Cassel found that Napier could occasionally climb, stoop, kneel and balance and that she could occasionally or never crouch and crawl. (R. at 237.) Dr. Cassel indicated that Napier's ability to reach was impaired as well as her ability to push and pull. (R. at 237.) He also indicated that Napier could not work around temperature extremes or vibration. (R. at 238.)

-6-

The record shows that Napier received emergency room treatment at Norton Community Hospital on four occasions, February 17, 2000, March 27, 2000, April 6, 2000, and April 29, 2000, for symptoms of fibroymalgia that included back, neck and shoulder pain. (R. at 139-44, 191-95.)

On September 20, 2000, Howard S. Leizer, Ph.D., a state agency psychologist, indicated that Napier suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 164-79.) Leizer indicated that Napier had mild restrictions on her activities of daily living, in maintaining social functioning, in maintaining concentration, persistence or pace and that she had never experienced episodes of decompensation. (R. at 176.)

On December 6, 2000, Dr. Karl W. Konrad, Ph.D., M.D., examined Napier at the request of Disability Determination Services. (R. at 147-49.) Napier complained of back pain and fibromyalgia. (R. at 147.) Dr. Konrad reported that Napier had full range of motion of all joints. (R. at 147.) She had no tenderness, heat, swelling or deformity. (R. at 147.) A 12-point pressure point fibromyalgia test was negative. (R. at 147.) Napier's neck was supple with full range of motion. (R. at 147.) She had normal lumbar flexure and no muscle spasm. (R. at 147.) Straight leg raising tests were negative. (R. at 148.) She was able to rise from the chair and get on and off the examination table without problems. (R. at 148.) She had normal strength in the upper and lower extremities and grip. (R. at 148.) No asymmetrical muscle wasting was noted, and Napier's reflexes were normal. (R. at 148.) Mental examination was normal. (R. at 148.) Physical examination was remarkable for limited range of motion of the lumbar spine. (R. at 148.) X-rays of Napier's lumbar spine showed degenerative

disc disease at the L5-S1 level and flattening of lumbar flexure. (R. at 149.) She had an enlarged liver and a prominent spider angioma or spider vein. (R. at 148.) Dr. Konrad reported that Napier could occasionally lift and carry items weighing up to 25 pounds and frequently lift and carry items weighing up to 15 pounds. (R. at 149.) He indicated that Napier could stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday. (R. at 149.) Dr. Konrad diagnosed hepatomegaly, spider angiomas and degenerative disc disease at the L5-S1 level with limited range of motion. (R. at 149.)

On December 11, 2000, R. J. Milan Jr., a state agency psychologist, indicated that Napier suffered from a nonsevere affective disorder. (R. at 150-63.) He indicated that Napier had no restrictions on her activities of daily living and in maintaining social functioning. (R. at 160.) Milan indicated that Napier had mild limitations on her ability to maintain concentration, persistence or pace and that she had never experienced episodes of decompensation. (R. at 160.) Milan also reported that the record reflected more symptoms of mild depression rather than anxiety. (R. at 162.)

On December 11, 2000, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Napier had the residual functional capacity to perform medium work.[5] (R. at 180-90.) He noted no postural, manipulative, visual, communicative or environmental limitations. (R. at 183-85.) He reported that Napier had no severe physical impairment. (R. at 188.)

---

[5]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2005).

-8-

Case 2:05-cv-00040-JPJ-PMS   Document 17   Filed 06/15/06   Page 8 of 16   Pageid#: 58

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This

court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). While an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d) if he sufficiently explains his rationale and if the record supports his findings.

By decision dated October 19, 2001, the ALJ denied Napier's claims. (R. at 24-32.) The ALJ found that the medical evidence established that Napier had severe impairments, namely degenerative disc disease and fibromyalgia, but he found that Napier did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 31.) The ALJ found that Napier had the residual functional capacity to perform light work. (R. at 31.) Based on Napier's age, education and past work history and the Grids, the ALJ found that other jobs existed that Napier could perform. (R. at 31.) Therefore, the

-10-

ALJ concluded that Napier was not under a disability as defined by the Act and was not eligible for benefits. (R. at 31-32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

In her brief, Napier argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-8, 14.) Napier also argues that the ALJ erred by failing to obtain vocational expert testimony. (Plaintiff's Brief at 6, 8-9, 14.) Napier further argues that the ALJ erred by not accepting the opinion of her treating physician, Dr. Cassel. (Plaintiff's Brief at 6, 10-14.)

Napier argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 6-8, 14.) The ALJ in this case found that Napier's mental impairments resulted in no greater than mild restrictions in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 28.) He found that Napier had never experienced repeated episodes of decompensation. (R. at 28.) These findings are supported by the two state agency psychologists. (R. at 150-63, 164-79.) State agency psychologists Leizer and Milan found that Napier suffered from a nonsevere affective disorder and anxiety-related disorder, which resulted in no limitations to only mild limitations in Napier's ability to perform her activities of daily living, to maintain social functioning and to maintain concentration, persistence or pace. (R. at 150, 160, 164, 176.) In December 2000, Dr. Konrad reported that Napier's mental examination was normal. (R. at 148.) Although Napier's primary care physician prescribed antidepressant and anti-anxiety medication, Napier never saw a mental health

specialist, attended therapy or sought specific psychological help. (R. at 262.) There is no evidence that Dr. Cassel recommended or referred Napier to a psychologist or psychiatrist. In 2001, Napier reported that she did not "really feel depressed," and Dr. Cassel noted that her condition and medications were stable. (R. at 200.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Napier did not suffer from a severe mental impairment.

Napier also argues that the ALJ erred by not accepting the opinion of her treating physician Dr. Cassel. (Plaintiff's Brief at 6,10-14.) For the following reasons, I find that substantial evidence supports the ALJ's finding on this issue. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2005). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ in this case found that Napier had the residual functional capacity to perform light work. (R. at 31.) The ALJ gave significant weight to the opinions of Dr. Konrad and the state agency physician in making this determination. (R. at 28.) The

-12-

Case 2:05-cv-00040-JPJ-PMS   Document 17   Filed 06/15/06   Page 12 of 16   Pageid#: 62

ALJ noted that, during the time period at issue, Napier saw Dr. Cassel intermittently for conservative treatment, and did not require extensive treatment, referral to a specialist, therapy, surgery or hospitalization. (R. at 29.) In December 2000, Dr. Konrad reported that Napier had full range of motion of all joints. (R. at 147.) She had no tenderness, heat, swelling or deformity. (R. at 147.) He did not find any trigger points. (R. at 147.) Napier had normal lumbar flexure and no muscle spasms. (R. at 147.) Straight leg raising tests were negative. (R. at 148.) She had normal strength in all extremities. (R. at 148.) No muscle wasting was noted, and Napier's reflexes were normal. (R. at 148.) X-rays of Napier's lumbar spine showed degenerative disc disease at the L5-S1 level. (R. at 149.) Dr. Konrad reported that Napier could occasionally lift and carry items weighing up to 25 pounds and frequently lift and carry items weighing up to 15 pounds. (R. at 149.) Dr. Surrusco indicated that Napier had the residual functional capacity to perform medium work. (R. at 180-90.) For these reasons, I find that substantial evidence supports the ALJ's rejection of Dr. Cassel's findings. I also find that substantial evidence exists to support the ALJ's finding with regard to Napier's residual functional capacity.

Based on my findings, I will not address Napier's final argument that the ALJ erred by failing to call a vocational expert. Without finding that Napier suffered from a nonexertional impairment, the ALJ was justified in relying on the Grids. *See* 20 C.F.R. §§ 404.1569a, 416.969a (2005).

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now

submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Napier did not suffer from a severe mental impairment;

2. Substantial evidence exists to support the ALJ's finding that Napier had the residual functional capacity to perform light work; and

3. Substantial evidence exists to support the ALJ's finding that Napier was not disabled under the Act and was not entitled to benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Napier's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

-14-

Case 2:05-cv-00040-JPJ-PMS   Document 17   Filed 06/15/06   Page 14 of 16   Pageid#: 64

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 15th day of June 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE